No. 24-2180

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

UNITED STATES OF AMERICA *ex rel.* ADVENTIST HEALTH
SYSTEM/WEST,

Plaintiff-Appellant,

v.

ABBVIE INC., *et al.*,

Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the Central District of California

————————————

**BRIEF FOR UNITED STATES OF AMERICA
AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT**

————————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

E. MARTIN ESTRADA
  *United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
KEVIN B. SOTER
  *Attorneys, Appellate Staff
  Civil Division, Room 7222
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-1754*

# TABLE OF CONTENTS

**<u>Page</u>**

INTRODUCTION AND INTEREST OF THE UNITED STATES.............. 1

STATEMENT OF THE ISSUE ....................................................... 3

STATEMENT OF THE CASE ....................................................... 3

    A.    Statutory Background ................................................ 3

        1.    The False Claims Act ........................................ 3

        2.    Section 340B of the Public Health Service Act .................... 4

    B.    Factual and Procedural Background ........................................... 6

SUMMARY OF ARGUMENT ..................................................... 8

ARGUMENT ............................................................................ 9

*Astra* does not bar FCA claims by a relator alleging that a defendant knowingly caused the submission of false claims in violation of the 340B Program's core requirements. ....................................................... 9

CONCLUSION ......................................................................... 20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page(s)**

*Astra USA, Inc. v. Santa Clara County,*
   563 U.S. 110 (2011) ............................................... 1, 5, 8, 10, 11, 12, 13, 15

*Cook County v. United States ex rel. Chandler,*
   538 U.S. 119 (2003) .................................................................................... 3

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
   586 U.S. 63 (2019) ................................................................................... 10

*Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.,*
   951 F.3d 1142 (9th Cir. 2020) ................................................................. 17

*United States v. Blue Cross & Blue Shield of Ala., Inc.,*
   156 F.3d 1098 (11th Cir. 1998) .............................................................. 18

*United States v. Borden Co.,*
   308 U.S. 188 (1939) ................................................................................ 17

*United States v. General Dynamics Corp.,*
   19 F.3d 770 (2d Cir. 1994) ..................................................................... 18

*United States v. Johnson,*
   529 U.S. 53 (2000) .................................................................................. 13

*United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.,*
   608 F.3d 871 (D.C. Cir. 2010) ................................................................ 18

*United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5,*
   688 F.3d 410 (8th Cir. 2012) .................................................................. 18

*United States ex rel. Polansky v. Executive Health Res., Inc.,*
   599 U.S. 419 (2023) ..................................................................... 3, 4, 10, 16

*United States ex rel. Sutton v. Double Day Office Servs., Inc.,*
   121 F.3d 531 (9th Cir. 1997) ....................................................... 16, 17, 18

*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
   579 U.S. 176 (2016) ......................................................................... 14, 17-18

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens,*
   29 U.S. 765 (2000) ............................................................................. 4, 10

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ................................................................. 12

**Statutes:**

False Claims Act (FCA):
   31 U.S.C. § 3729 *et seq.* ............................................................. 1
     31 U.S.C. § 3729(a) ............................................................. 12
     31 U.S.C. § 3729(a)(1)(G) ................................................. 14
     31 U.S.C. § 3729(b)(2)(B) ................................................. 13
     31 U.S.C. § 3729(b)(2)(D) ................................................. 13
     31 U.S.C. § 3729(d) ............................................................. 13,
     31 U.S.C. § 3730(a) ............................................................. 3, 9
     31 U.S.C. § 3730(b) ............................................................. 3, 9, 12
     31 U.S.C. § 3730(b)(1) ....................................................... 3, 9
     31 U.S.C. § 3730(b)(4)(A) ................................................. 16
     31 U.S.C. § 3730(c)(2)(A) ................................................. 16
     31 U.S.C. § 3730(c)(2)(B) ................................................. 16
     31 U.S.C. § 3730(c)(2)(C) ................................................. 16
     31 U.S.C. § 3730(c)(3) ....................................................... 16
     31 U.S.C. § 3730(c)(4) ....................................................... 16
     31 U.S.C. § 3730(c)(5) ....................................................... 17
     31 U.S.C. § 3730(d)(1) ....................................................... 4
     31 U.S.C. § 3730(d)(2) ....................................................... 4
     31 U.S.C. § 3730(e)(3) ....................................................... 13

Public Health Service Act:
   42 U.S.C. § 256b ................................................................. 1, 4
   42 U.S.C. § 256b(a)(1) ....................................................... 4

Service Contract Act of 1965,
   41 U.S.C. §§ 351-358 ......................................................... 16

42 U.S.C. § 1395m(g)(1) ....................................................... 4

**Regulations:**

42 C.F.R. § 447.502 ............................................................... 4

42 C.F.R. § 447.512(b) ........................................................... 4

iii

**Legislative Material:**

S. Rep. No. 99-345 (1986) ............................................................. 3

**Other Authority:**

Health Res. & Servs. Admin., HHS, *General Instructions for
    Completing the Pharmaceutical Pricing Agreement (PPA)*,
    https://perma.cc/G3FG-6C2B ................................................. 5

## INTRODUCTION AND INTEREST OF THE UNITED STATES

The False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, is the federal government's primary tool to combat fraud and recover losses due to fraud in federal programs. Accordingly, the United States has a substantial interest in ensuring that courts properly interpret and apply the FCA.

In this *qui tam* action under the FCA, relator alleges that the defendant drug manufacturers caused government payors such as Medicare and Medicaid to overpay for drugs. Relator's theory concerns drug pricing under Section 340B of the Public Health Service Act, 42 U.S.C. § 256b (the 340B Program), which imposes ceilings on the prices that drug manufacturers may charge for medications sold to specified health-care facilities (known as "covered entities"). Relator alleges that the defendant drug manufacturers charged prices exceeding the applicable ceiling prices, and relator seeks recovery for specific situations in which the covered entities are in turn required to pass on their drug acquisition costs directly to Medicaid and Medicare.

The district court dismissed the case, reasoning that relator's FCA claims are foreclosed by the Supreme Court's decision in *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), which held that covered entities could not sue drug manufacturers to recover the costs incurred by those covered entities

when drug manufacturers charge above-ceiling prices.  But *Astra* has no bearing on the government's ability to recover for its own injuries under the FCA based on an express cause of action that was not invoked by the *Astra* plaintiffs.  *Astra* involved covered entities who had attempted to assert claims under a quasi-contract theory even though their suit was effectively identical to a private right of action under the 340B statute itself—a cause of action Congress did not provide for.  The FCA claims in this case, by contrast, seek to effectuate Congress's separate decision to establish an express cause of action to recover losses to the government due to fraud in federal programs.

In *Astra*, the United States participated as *amicus curiae* in support of the result the Court ultimately reached.  The government made clear in *Astra* that, while such a result would vindicate Congress's intent with respect to suits asserting injury to private parties in connection with the 340B Program, the government would have other tools available to ensure compliance with the program—including "False Claims Act (FCA) actions."  Brief for the United States as Amicus Curiae Supporting Petitioners at 30 & n.11, *Astra*, 563 U.S. 110 (No. 09-1273), 2010 WL 4717264.  The United States is participating as *amicus curiae* in this appeal to urge this Court to correct the district court's erroneous contrary conclusion.  The government expresses no view on the ultimate merits of the case.

## STATEMENT OF THE ISSUE

The issue presented is whether the Supreme Court's decision in *Astra* bars FCA claims by a *qui tam* relator alleging that the defendants knowingly caused the submission of false claims to the government that violated core requirements of the 340B Program.

## STATEMENT OF THE CASE

### A.    Statutory Background

#### 1.    The False Claims Act

The FCA is "the Government's primary litigative tool" for combatting fraud.  S. Rep. No. 99-345, at 2 (1986).  It was drafted "expansively[] . . . 'to reach all types of fraud, without qualification, that might result in financial loss to the Government,'" *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003).

"From the start, the FCA has been enforced through a unique public-private scheme."  *United States ex rel. Polansky v. Executive Health Res., Inc.*, 599 U.S. 419, 424 (2023).  FCA cases can be brought either directly by the government, *see* 31 U.S.C. § 3730(a), or by private parties known as *qui tam* relators, *see id.* § 3730(b).  Suits prosecuted by relators "are 'brought in the name of the Government,'" and "the injury they assert is exclusively to the Government."  *Polansky*, 599 U.S. at 424-25 (quoting 31 U.S.C. § 3730(b)(1)).

The FCA "'effect[s] a partial assignment of the Government's' own damages claim," providing that a relator may receive up to 30% of the total recovery. *Id.* at 425 (alteration in original) (quoting *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000)); *see* 31 U.S.C. § 3730(d)(1)-(2).

## 2.    Section 340B of the Public Health Service Act

Under Section 340B of the Public Health Service Act, 42 U.S.C. § 256b, drug manufacturers that participate in Medicaid or Medicare Part B must also offer their drugs at discounted prices to covered entities, many of them providers of safety-net services to the poor.  In certain circumstances, a covered entity's drug costs directly affect costs incurred by government payors such as Medicare and Medicaid.  *See, e.g.*, 42 U.S.C. § 1395m(g)(1) (providing that facilities designated as "critical access" hospitals generally must bill Medicare for 101% of their drug costs when treating Medicare patients); 42 C.F.R. §§ 447.502, 447.512(b) (specifying that a facility's actual acquisition costs can directly affect the maximum drug payment to be made by Medicaid).

To implement Section 340B, Congress required the Department of Health and Human Services (HHS) to enter into standard agreements with drug manufacturers.  One of the conditions those agreements set for the receipt of Medicaid funds is that manufacturers will provide the pricing required by Section 340B.  42 U.S.C. § 256b(a)(1); *see* Health Res. & Servs. Admin., HHS,

4

*General Instructions for Completing the Pharmaceutical Pricing Agreement (PPA)* 2-12, https://perma.cc/G3FG-6C2B (example of standard agreement).

Congress has not created a private right of action through which the entities that benefit from 340B pricing may sue to enforce manufacturers' obligation to provide that pricing. In *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), the Supreme Court considered whether these private entities could nevertheless bring breach-of-contract actions as third-party beneficiaries of the 340B form agreements that drug manufacturers enter into with the government. The Court held that they could not. *Id.* at 118-22. The Court concluded that the form agreements between HHS and the participating drug manufacturers "simply incorporate statutory obligations and record the manufacturers' agreement to abide by them" and that "[t]he absence of a private right to enforce the statutory ceiling-price obligations would be rendered meaningless if 340B entities could overcome that obstacle by suing to enforce the contract's ceiling-price obligations instead." *Id.* at 118. The Court also stated that, "[f]ar from assisting HHS, suits by 340B entities would undermine the agency's efforts to administer both Medicaid and § 340B harmoniously and on a uniform, nationwide basis." *Id.* at 120.

## B.    Factual and Procedural Background

This *qui tam* action under the FCA was filed by a hospital system entitled to the benefits of 340B pricing.  ER-34–35 (First Amended Complaint (FAC) ¶¶ 80-81).  Defendants are drug manufacturers that participate in Medicaid and are thus obligated to provide 340B-compliant pricing.  ER-24–28 (FAC ¶¶ 37-57).  Relator alleges that defendants knowingly disregarded the statutory formula, charging covered entities substantially more than the applicable ceiling prices, thereby causing those covered entities to submit false claims to the Medicare and Medicaid programs.  *See, e.g.*, ER-17–19 (FAC ¶¶ 3-13) (explaining how defendants' alleged overcharges caused the submission of inflated claims); ER-42–44 (FAC ¶¶ 111, 114-117) (allegations regarding injury to Medicaid); ER-42, ER-46 (FAC ¶¶ 112, 127-128) (allegations regarding injury to Medicare).[1]

Defendants moved to dismiss the complaint on several grounds, but the district court found it necessary to address only one: defendants' contention that the Supreme Court's decision in *Astra* "requires dismissal of all claims."

---

[1] Relator also alleges state-law false claims involving a number of states. And the complaint identifies a separate scenario, which does not appear to implicate federal funds, through which these state governments would be further injured by overcharges to covered entities: some of these entities, such as prisons and county-owned hospitals, are "funded in whole or in part by state or local" governments.  ER-47 (FAC ¶ 129).

6

ER-7. The district court acknowledged that nothing in *Astra* directly addresses the FCA's express cause of action to redress fraud against the federal government. ER-7. But the court concluded that "the underlying rationale of *Astra* applies as much to a *qui tam* FCA claim as to" the claims in *Astra*. ER-8. The court stated that, in a case where the relator's allegation of falsity turns on the defendant's alleged non-compliance with Section 340B Program requirements, "the FCA adds nothing substantive to a direct enforcement action under the statute other than that Defendants must have acted knowingly, recklessly, or with deliberate ignorance." ER-9. And it expressed the view that "*Astra*'s concern about fragmented and inconsistent enforcement of the 340B Program is only slightly less for *qui tam* FCA actions as it was for the private [Section 340B] contract claims." ER-9. The court concluded that "*Astra* bars FCA claims by a *qui tam* plaintiff where the allegation of falsity is that the defendants failed to comply with the statutory requirements of the 340B Program." ER-9. The court stated that "the analysis would be more complicated if the FCA claim were brought directly by a federal or state government," but did not elaborate on how the analysis would differ and asserted that it was not "express[ing]" any "opinion regarding" such a claim. ER-9–10.

7

## SUMMARY OF ARGUMENT

The district court erred in holding that *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), bars FCA claims by a *qui tam* relator alleging that the defendants knowingly caused the submission of false claims to the government that violated core requirements of the 340B Program. Congress did not authorize private parties who assert that they have overpaid for drugs under that program to bring suit against drug manufacturers, and *Astra* simply held that those private parties could not circumvent Congress's judgment through artful pleading. Congress did, however, supply an express cause of action under the FCA, authorizing the United States, or a private-party relator acting on its behalf, to recover damages to the government for fraud in its programs, including the type of fraud in the 340B Program that relator has alleged here. The district court thus fundamentally erred in concluding that an FCA suit to redress injuries to the government due to fraud is "in substance one and the same" as the hypothetical cause of action under the 340B statute that the Supreme Court rejected in *Astra*.

Moreover, the district court's erroneous reasoning could have serious implications beyond this case. As this and other courts have held, there is no basis for creating ad hoc exemptions from the FCA based on the existence of alternative enforcement mechanisms or limitations on the ability of private

8

parties to independently enforce statutory program requirements. This Court should accordingly reverse the judgment below to ensure that the FCA remains a robust tool for the government to combat fraud in *all* types of government programs, even where separate administrative mechanisms may exist to ensure compliance.

## ARGUMENT

### *ASTRA* DOES NOT BAR FCA CLAIMS BY A RELATOR ALLEGING THAT A DEFENDANT KNOWINGLY CAUSED THE SUBMISSION OF FALSE CLAIMS IN VIOLATION OF THE 340B PROGRAM'S CORE REQUIREMENTS.

The complaint in this case alleges that defendants fraudulently caused injury to the federal fisc. Relator alleges that defendants knowingly disregarded Section 340B's statutory formula and submitted or caused the submission of false claims to Medicare and Medicaid. *See, e.g.*, ER-17–19 (FAC ¶¶ 3-13). Relator seeks a recovery on behalf of the federal government for damages where drug overcharges to covered entities would be passed through to the government in the form of increased costs to Medicaid or Medicare. ER-42–44, ER-46 (FAC ¶¶ 111-112, 114-117, 127-128). These allegations fall squarely within the FCA. *See* 31 U.S.C. § 3729(a).

Regardless of whether an FCA case is brought by the Attorney General, *see* 31 U.S.C. § 3730(a), or by a *qui tam* relator, *see id.* § 3730(b), the action is "brought in the name of the Government," *id.* § 3730(b)(1), and it seeks to

remedy injury to the government—not injury to any private parties who may have been separately harmed by the defendant's conduct. As the Supreme Court has explained, the FCA "can reasonably be regarded as effecting a partial assignment of the Government's damages claim" to the relator, and "a *qui tam* relator is, in effect, suing as a partial assignee of the United States." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 & n.4 (2000) (emphasis omitted). But while the statute thereby gives the relator a stake in the lawsuit's outcome, "the injury [relators] assert is exclusively to the Government." *United States ex rel. Polansky v. Executive Health Res., Inc.*, 599 U.S. 419, 425 (2023).

The district court effectively read an exception into the text of the FCA that does not exist. It erred in doing so. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 70 (2019) ("[W]e may not engraft our own exceptions onto the statutory text."). The court concluded that *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), "bars FCA claims by a *qui tam* plaintiff where the allegation of falsity is that the defendants failed to comply with the statutory requirements of the 340B Program." ER-9. But *Astra* has no bearing on the FCA's express cause of action for fraud against the government.

*Astra* was a suit brought by private covered entities seeking "compensatory damages" for their own injuries under a "breach of contract"

10

theory. 563 U.S. at 116. As explained above, *see supra* pp. 4-5, drug manufacturers that participate in the 340B Program enter into form agreements with HHS that memorialize their statutory obligations. Congress has not created a private right of action through which the entities that benefit from 340B pricing may sue to enforce manufacturers' obligation to provide that pricing, but the entities in *Astra* nonetheless attempted to recover for their private injuries by invoking those form agreements and refashioning their statutory claims as breach-of-contract claims. *Astra*, 563 U.S. at 117 (noting that it was "conceded" that covered entities lack a private right of action). The Court rejected the covered entities' attempt to make an end-run around Congress's decision to withhold a private right of action, reasoning that "[t]he absence of a private right to enforce the statutory ceiling-price obligations would be rendered meaningless if covered entities could overcome that obstacle by suing to enforce the contract's ceiling-price obligations instead." *Id.* at 118; *see also id.* at 119 n.4 (explaining that the *Astra* plaintiffs' theory would "'circumvent Congress's decision not to permit private enforcement'" of Section 340B (quoting Brief for United States as Amicus Curiae Supporting Petitioners at 23, *Astra*, No. 09-1273 (U.S. Nov. 2010)).

*Astra*'s reasoning has no application to an FCA suit like this one. Unlike the plaintiffs in *Astra*, relator here relies on an *express* cause of action conferred

11

by the FCA. *See* 31 U.S.C. §§ 3729(a), 3730(b). The Court in *Astra* did not refuse to enforce a statute that, by its terms, gives a plaintiff the right to sue—as the FCA does when it authorizes the government or a relator standing in its shoes to recover damages to the public fisc. In *Astra*, the Supreme Court declined to recognize a third-party beneficiary action that had no explicit statutory grounding, in a circumstance where Congress had not authorized private enforcement of Section 340B itself and the relevant form contracts simply tracked the terms of the statute. *See Astra*, 563 U.S. at 118-22. The Court explained that a private right of action for violating a federal statute exists only where there is "'congressional intent to provide a private remedy,'" *id.* at 117 (quoting *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991)), and it reasoned that when Congress omitted such a remedy from the 340B statute, it did not leave room for claims that were "in substance one and the same," *id.* at 114.

This case, by contrast, does not call upon a court to make any similar inferences as to congressional intent: the FCA confers an express cause of action to recover for fraud against the government in federal programs and contracts. It confers that cause of action on both the United States and private relators, and it does not say that only certain relators may sue while others such as the covered entity that filed this suit may not. While the statute carves

12

out exceptions for certain types of fraud claims, it contains no similar exception for allegations related to the 340B Program.  For example, the FCA establishes an "[e]xclusion" for "claims, records, or statements made under the Internal Revenue Code of 1986," 31 U.S.C. § 3729(d), and the statute also bars certain claims in connection with federal employment, *id.* § 3729(b)(2)(B), (D).  In addition, relators are barred from pursuing suits that are "based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party."  *Id.* § 3730(e)(3).  The enumeration of these specific exceptions in the statute underscores that no exception for fraud involving the 340B Program should be read into the statute.  *See United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others.  The proper inference, and the one we adopt here, is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.").

Unlike the breach-of-contract suit in *Astra*, this FCA suit is not "in substance one and the same" as a suit under a hypothetical private cause of action in the 340B statute.  563 U.S. at 114.  Relator's FCA claims assert injury to *the government*, and the recovery they seek under the FCA's express cause of

13

action is tied to that injury, not any private injuries that covered entities may separately incur.

The district court acknowledged this "obvious difference between FCA *qui tam* claims and the third-party beneficiary contract claims considered in *Astra*," ER-7, but nevertheless asserted that "the FCA adds nothing substantive to a direct enforcement action under the statute other than that Defendants must have acted knowingly, recklessly, or with deliberate ignorance," ER-9. The court erred in discounting these significant differences between these two types of claims and overlooked other important differences. The core premise of the FCA is that fraud *against the federal government* is a problem different in kind from the inevitable good-faith disputes about various entities' entitlement to payment under diverse federal programs. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016) (emphasizing that the FCA "is not . . . a vehicle for punishing garden-variety breaches of contract or regulatory violations" (citation omitted)). Congress established heightened sanctions for FCA violations—treble damages and civil penalties, *see* 31 U.S.C. § 3729(a)(1)(G)—and it enlisted private relators in its efforts to root out deliberate efforts to defraud the government. The conclusion that Congress did not implicitly create a 340B-specific exception from the FCA thus hardly

14

"render[s] the lack of a private right of action" in Section 340B

"'meaningless,'" ER-8 (quoting *Astra*, 563 U.S. at 118).

The district court likewise erred in relying on "*Astra*'s concern about fragmented and inconsistent enforcement of the 340B Program." ER-9. As *Astra* explained, when Congress enacted Section 340B, it "'centralized enforcement in the government.'" *Astra*, 563 U.S. at 119 (quoting Brief for the United States as Amicus Curiae Supporting Petitioners at 32, *Astra*, 563 U.S. 110 (No. 09-1273), 2010 WL 4717264). Congress charged HHS with administering the 340B Program, and "[f]ar from assisting HHS," allowing covered entities to recover for their own injuries through private lawsuits "would undermine the agency's efforts to administer both Medicaid and § 340B harmoniously and on a uniform, nationwide basis." *Id.* at 120. As the government made clear in *Astra*, however, one way the government can seek to enforce manufacturers' obligations under the program is to bring "False Claims Act (FCA) actions." Brief for the United States as Amicus Curiae Supporting Petitioners at 30 & n.11, *Astra*, 563 U.S. 110 (No. 09-1273), 2010 WL 4717264.

Regardless of whether the government brings such FCA claims itself or relies upon private relators to do so, the United States has a variety of tools available to exert control over the lawsuit, enabling the government to prevent

15

the sorts of adverse consequences that concerned the *Astra* Court. *See, e.g.*, 31 U.S.C. § 3730(b)(4)(A), (c)(3) (government's authority to intervene in the case); *id.* § 3730(c)(2)(A) (government's authority to dismiss an FCA case "notwithstanding the objections" of the relator); *id.* § 3730(c)(2)(B) (government's authority to settle an FCA case "notwithstanding the objections" of the relator); *id.* § 3730(c)(2)(C) (specifying that, in response to a government showing, courts may "impose limitations on [a relator's] participation" in a lawsuit in response to a government showing); *id.* § 3730(C)(4) (specifying that, in response to a government showing, courts may stay certain discovery sought by the relator); *see also Polansky*, 599 U.S. at 438 (recognizing government's broad authority to dismiss *qui tam* suits over the objections of relators).

Congress's decision to centralize enforcement of the 340B Program in the government provides no indication that it intended to supplant FCA claims related to that program. On the contrary, as this Court has recognized, the government's "exclusive right to enforcement" under a particular federal program does not preclude an action under the FCA asserting fraud against the government. *United States ex rel. Sutton v. Double Day Office Servs., Inc.*, 121 F.3d 531, 533, 535 (9th Cir. 1997) (explaining that exclusive enforcement provisions of the Service Contract Act of 1965, 41 U.S.C. §§ 351-358, did not preclude an

16

action under the FCA). Such a result would "require concluding that" the program-specific statute "impliedly preempts the FCA." *Id.* at 535. But the standard for demonstrating an implied repeal is quite demanding—a "'clear and manifest'" intent for the later-enacted statute to impliedly repeal provisions of the prior law, *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142, 1156 (9th Cir. 2020) (quoting *United States v. Borden Co.*, 308 U.S. 188, 198 (1939))—and it is plainly not met here.

In addition to the FCA provisions already discussed, the FCA's alternate-remedy provisions further underscore that the demanding standard for implied repeals is not met here. Those provisions state that the United States "*may* elect to pursue its claim through any alternate remedy available . . ., including any administrative proceeding to determine a civil money penalty." 31 U.S.C. § 3730(c)(5) (emphasis added). The FCA thus expressly contemplates parallel, agency-specific mechanisms for uncovering or addressing fraud. If Congress had intended to *require* the government to pursue an alternative remedy in lieu of an FCA claim, or if Congress had intended to foreclose FCA claims predicated upon the violations of statutes like the 340B Program, it could have done so. In the absence of any statutory text indicating a clear and manifest intent to foreclose such a category of FCA claim, the district court was not free to engraft atextual limitations onto the FCA. *See*

17

*Escobar*, 579 U.S. at 190, 192 (rejecting a defendant's proposed limitation on FCA liability because "[n]othing in the text of the False Claims Act supports" that limitation, and "policy arguments cannot supersede the clear statutory text").

The district court's decision conflicts not only with the FCA's text and purpose and with this Court's decision in *Sutton*, but also with the decisions of several other courts of appeals, which have consistently declined to hold that FCA actions, including *qui tam* suits, are impliedly precluded by the administrative enforcement schemes established in other statutes. *See, e.g.*, *Sutton*, 121 F.3d at 533-35; *United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 688 F.3d 410, 415 (8th Cir. 2012); *United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 885–86 (D.C. Cir. 2010); *United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F.3d 1098, 1105 (11th Cir. 1998); *United States v. General Dynamics Corp.*, 19 F.3d 770, 774-75 (2d Cir. 1994).

The district court stated that its holding concerns only "FCA claims by a *qui tam* plaintiff where the allegation of falsity is that the defendants failed to comply with the statutory requirements of the 340B Program." ER-9. But the mode of analysis the court adopted —*i.e.*, inquiring whether limits on other remedial mechanisms displace the express cause of action in the FCA—is

18

deeply flawed. If similar logic were applied to other FCA cases, that could have significant adverse consequences beyond this case.

The 340B statute is hardly the only program with the features that, in the district court's view, preclude a relator from pursuing claims under the FCA: the lack of a private right of action in a context where alternative enforcement mechanisms are also available to the government. FCA suits are routinely filed, both by the United States and by private relators, in contexts that share those features. For example, FCA suits frequently rest on allegations of fraud against the Medicare and Medicaid programs, even though those programs have their own procedures for correcting overpayments. FCA actions likewise often rest on allegations that defendants have knowingly misrepresented the quality of goods provided pursuant to government contracts, even though separate mechanisms exist to resolve disputes concerning contract compliance. And *qui tam* relators frequently file FCA actions in those contexts, even though the relators would not be proper plaintiffs in suits to enforce requirements under Medicare or Medicaid, or the government contracts themselves. Thus, while the district court appears to have viewed this case as involving an idiosyncratic factual setting for which it could articulate a narrow holding, the logic of its opinion has potentially far-reaching implications that are at odds with the FCA's plain text and purpose.

19

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, and the case remanded for further proceedings.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
    *General*

E. MARTIN ESTRADA
  *United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH

 *s/ Kevin B. Soter*
KEVIN B. SOTER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7222*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*
  *kevin.b.soter@usdoj.gov*

July 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of
Appellate Procedure 29(a)(5) because it contains 4,321 words. This brief also
complies with the typeface and type-style requirements of Federal Rule of
Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for
Microsoft 365 in Calisto MT 14-point font, a proportionally spaced typeface.


*s/ Kevin B. Soter*
Kevin B. Soter