No. 24-2180

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA *ex rel.* ADVENTIST HEALTH SYSTEM/WEST,

*Plaintiff-Appellant*,

v.

ABBVIE INC., *et al.*;

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California

No. 2:21-cv-04249-DSF-SK
Hon. Dale S. Fischer

# BRIEF OF 340B HEALTH AS AMICUS CURIAE
# IN SUPPORT OF APPELLANTS

Ian J. Barlow (State Bar No. 262213)
KERSHAW TALLEY BARLOW PC
401 Watt Ave., Ste. 1
Sacramento, CA 95864
Tel: 916-779-7000
Fax: 916-244-4829
Email: ian@ktblegal.com

*Attorneys for Amicus Curiae 340B Health*

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Ninth Circuit Rule 26.1, amicus curiae 340B Health makes the following disclosure: Amicus is a not-for-profit organization and does not issue stock. Therefore, no parent companies or publicly held corporations own 10% or more of the stock of the Amicus.

## RULE 29 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E)(i), 340B Health states that no party's counsel authored this amicus brief in whole or in part. No party or party's counsel contributed money that was intended to fund or prepare the brief, and no person—other than 340B Health—contributed money that was intended to fund preparing or submitting the brief. All parties have consented to the filing of this brief.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................... ii

RULE 29 DISCLOSURE STATEMENT ............................................................ ii

TABLE OF CONTENTS .................................................................................... iii

TABLE OF AUTHORITIES ...............................................................................iv

INTEREST OF *AMICUS CURIAE* ......................................................................1

INTRODUCTION AND BACKGROUND .........................................................2

ARGUMENT .......................................................................................................3

    I.     The 340B Program Helps Providers Fund Care for Their Patients .................3

    II.    Manufacturer Overcharges Harm Safety Net Providers and Patients .............6

CONCLUSION ....................................................................................................7

CERTIFICATE OF COMPLIANCE ...................................................................9

CERTIFICATE OF SERVICE ..........................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
   142 S. Ct. 1896, 1905–06 (2022). ..................................................................8

**Statutes and Legislation**

42 U.S.C. § 256b ................................................................................................2

42 U.S.C. § 1396r-8(c)(2)(A). .......................................................................2,7

H.R. Rep. No. 102-384(II), at 12 (1992). .........................................................3

**Rules**

Federal Rule of Appellate Procedure 26.1 ..................................................... ii

Federal Rule of Appellate Procedure 29(a)(4)(E)(i) ...................................... ii

Ninth Circuit Rule 26.1 ................................................................................... ii

**Other Authorities**

340B Health Annual Survey 2022: *Vital 340B-Supported Patient Services
   Threatened as Manufacturer Restrictions Cut Into Savings*, 340B Health
   (July 2023),
   https://www.340bhealth.org/files/340B_Health_Survey_Report_2022_FINA
   L.pdf ............................................................................................................3,4,5

DaVanzo, D., Health Economics Consulting,
   *Issue Brief: Characteristics of Cancer Patients Receiving Drugs at 340B
   DSH Hospitals, Non-340B Hospitals, and Physician Offices* (2020),
   https://www.340bhealth.org/files/340B_Oncology_Demographics_Issue_Bri
   ef_Final.pdf ....................................................................................................6

DaVanzo, D., Health Economics Consulting,
　*340B DSH Hospitals Increased Uncompensated Care in 2020 Despite Significant Financial Stress* (July 2020),
　https://www.340bhealth.org/files/Dobson_DaVanzo_Op_Margins_and_UC_FINAL.pdf ................................................................................4,5

DaVanzo, D., Health Economics Consulting,
　*340B DSH Hospitals Serve Higher Share of Patients with Low Incomes* (Sept. 2022),
　https://www.340bhealth.org/files/340B_and_Low_Income_Populations_Report_2022_FINAL.pdf ................................................................4,5

DaVanzo, D., Health Economics Consulting,
　*340B Hospitals Prescribe Retail and Specialty Drugs to a Greater Share of Historically Underserved Populations* (May 2024),
　https://www.340bhealth.org/files/340B_Part_D_Drug_Demographic_Study_2024_FINAL.pdf. ................................................................6

Dickson, S.,
　*Association Between the Percentage of US Drug Sales Subject to Inflation Penalties and the Extent of Drug Price Increases* (Sept. 2020),
　https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2770540 .....7

Dobson, A. *et al.*,
　*The Role of 340B Hospitals in Serving Medicaid and Low-Income Medicare Patients* (July 2020),
　https://www.340bhealth.org/files/340B_and_Medicaid_and_Low_Income_Medicare_Patients_Report_7.10.2020_FINAL_.pdf ......................................5

L & M Policy Research,
　*Examination of Medicare Patient Demographic Characteristics for 340B and Non-340B Hospitals and Physician Offices* (July 2022),
　https://www.340bhealth.org/files/LM-340B-Health-Demographic-Report-07-28- 2022_FINAL.pdf. ................................................................6

## INTEREST OF *AMICUS CURIAE*

340B Health (Amicus) is submitting this amicus curiae brief in connection with the lawsuit filed by Adventist Health System/West (Plaintiff-Relator). 340B Health is a national, not-for-profit organization founded in 1993 to advocate for 340B hospitals—a vital part of the nation's healthcare safety net. 340B Health represents over 1,500 public and private nonprofit hospitals and health systems participating in the federal 340B drug pricing program (the 340B program), including Adventist Health System/West. Our hospital members use 340B discounts for 340B drugs to support health care programs and services offered by their hospitals to serve the needs of underserved populations.

340B Health supports Adventist West's appeal of the U.S. District Court for the Central District of California's dismissal order, entered on March 18, 2024 (ECF No. 151). An essential component of the 340B program, which has operated for more than 30 years, is that pharmaceutical companies comply with their statutory obligations to offer 340B pricing to hospitals like Adventist/West that meet eligibility criteria, established by Congress, by serving a disproportionate level of low-income patients. Overcharges by drug companies for 340B drugs deny 340B hospitals some or all of the 340B savings that Congress intended they have available to meet the needs of their low-income patients. Accordingly, allegations by 340B hospitals that they have been overcharged for 340B drugs have significant

1

implications for Amicus's hospital members and the low-income and other vulnerable patients they serve, as discussed in Amicus's brief below.

## INTRODUCTION AND BACKGROUND

340B Health is a membership organization of more than 1,500 public and private nonprofit hospitals and health systems participating in the federal 340B drug pricing program (340B program). 340B Health monitors, educates, and serves as an advocate on legislative and regulatory issues related to the 340B program. Our membership consists of a broad spectrum of hospitals, including academic medical centers, community hospitals, children's hospitals, and rural facilities.

The 340B program, established by section 340B of the Public Health Service Act, requires that pharmaceutical manufacturers, as a condition of participating in the Medicaid and Medicare Part B markets, sell outpatient drugs at a discounted price to certain public and not-for-profit hospitals, community health centers, and other providers that serve patients with low incomes or living in rural areas (340B providers or covered entities). 42 U.S.C. § 256b. Drug manufacturers may charge 340B providers no more than the statutorily defined "ceiling price" for 340B covered drugs, 42 U.S.C. § 256b(a)(1), which is calculated by subtracting the unit rebate amount from the "average manufacturer price." 42 U.S.C. § 1396r-8(c)(2)(A). Congress also provided for a larger rebate when drug companies increase drug prices faster than the inflation rate. *Id*. 340B covered entities are then able to use funds

2

that would otherwise go towards higher drug costs to extend patient care and other services.

## ARGUMENT

**I.     The 340B Program Helps Providers Fund Care for Their Patients**

The purpose of the 340B program is to stretch the funding 340B providers have available to meet the needs of their patients. H.R. Rep. No. 102-384(II), at 12 (1992). 340B entities can do this because they receive their drugs at a discount and are reimbursed by insurers, including Medicare, at the non-discounted price of the drug. Hospitals use 340B savings to fund a wide range of activities and projects that expand access to services, improve patient care, subsidize essential services that operate at a loss, and support community health initiatives and capital improvement projects to help maintain a strong institution to ensure health care access for the community.[1] Many rural hospitals cite 340B as a critical component of keeping their doors open. *Id*.

The 340B program supports health care programs and services that serve the needs of underserved populations that 340B providers care for. The discounts allow 340B hospitals to provide and maintain more uncompensated care, unreimbursed

---

[1] 340B Health Annual Survey 2022: *Vital 340B-Supported Patient Services Threatened as Manufacturer Restrictions Cut Into Savings*, 340B Health (July 2023), https://www.340bhealth.org/files/340B_Health_Survey_Report_2022_FINAL.pdf.

care, and expand access to health care services to patients. *Id*. With razor thin operating margins and little ability to increase their revenue, hospitals use their 340B savings to provide and maintain more patient care services in underserved areas and broaden the types of services they offer. *Id*. 340B savings also support a variety of initiatives that enhance patient care and improve health outcomes, such as programs to ensure that patients are taking appropriate medications and that help patients manage their chronic diseases, such as diabetes. *Id*.

340B savings allow hospitals to provide specialized services that typically operate at a loss due to chronic under-reimbursement by payers and expenses associated with having to maintain costly standby capacity. These essential services, many of which would otherwise be unavailable without 340B, include trauma care, burn treatment, behavioral health services, and HIV/AIDS care.[2] 340B hospitals provide these services despite experiencing significantly lower operating margins, on average negative, compared to non-340B hospitals.[3] 340B also supports initiatives that address social determinants of health and improve health equity.

---

[2] DaVanzo, D., Health Economics Consulting, *340B DSH Hospitals Serve Higher Share of Patients with Low Incomes* (Sept. 2022), https://www.340bhealth.org/files/340B_and_Low_Income_Populations_Report_2022_FINAL.pdf.

[3] DaVanzo, D., Health Economics Consulting, *340B DSH Hospitals Increased Uncompensated Care in 2020 Despite Significant Financial Stress* (July 2020), https://www.340bhealth.org/files/Dobson_DaVanzo_Op_Margins_and_UC_FINAL.pdf.

4

*Supra* fn. 1. The United States Supreme Court recently affirmed the important role that 340B hospitals play in the nation's health care safety net, noting that "340B hospitals perform valuable services for low-income and rural communities but have to rely on limited federal funding for support."[4]

Moreover, research shows that the 340B program is having its intended effect. Hospitals participate in 340B only if they can demonstrate that they serve a disproportionate level of low-income patients or are small Critical Access Hospitals located primarily in rural areas. As a result of these strict eligibility criteria, 340B hospitals are responsible for providing over three-quarters (77%) of all hospital care for patients with Medicaid and more than two-thirds (67%) of hospital uncompensated and unreimbursed care. *Supra* fn. 2. 340B hospitals provide a disproportionate amount of uncompensated care[5] and community health and other specialized services.[6] Accordingly, unreimbursed and uncompensated care costs as a percent of total patient care costs are 27.4 percent higher, on average, for 340B hospitals than for non-340B hospitals. *Supra* fn. 3.

340B hospitals treat higher percentages of patients who have encountered

---

[4] *Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896, 1905-06 (2022).

[5] *Supra* fn. 3.

[6] Dobson, A. *et al.*, *The Role of 340B Hospitals in Serving Medicaid and Low-Income Medicare Patients* (July 2020), https://www.340bhealth.org/files/340B_and_Medicaid_and_Low_Income_Medicare_Patients_Report_7.10.2020_FINAL_.pdf.

5

difficulties accessing care when needed. Medicare Part D beneficiaries who receive outpatient drugs prescribed by providers at 340B DSH hospitals are more likely to be low-income and disabled than those who receive drugs prescribed by providers in non-340B hospitals or physician offices.[7] Patients receiving care at 340B hospitals are significantly more likely to be dually eligible for Medicare and Medicaid or be eligible for Medicare because of a disability.[8] In addition, 340B hospitals treat a higher proportion of patients receiving cancer drugs representing low-income or minority populations.[9]

## II. Manufacturer Overcharges Harm Safety Net Providers and Patients

The 340B program provides crucial relief from high drug prices to safety-net providers that rely on the savings to fund critical programs for their low-income, uninsured, and underinsured patient populations. These initiatives are imperiled by

---

[7] DaVanzo, D., Health Economics Consulting, *340B Hospitals Prescribe Retail and Specialty Drugs to a Greater Share of Historically Underserved Populations* (May 2024), https://www.340bhealth.org/files/340B_Part_D_Drug_Demographic_Study_2024_FINAL.pdf.

[8] L & M Policy Research, *Examination of Medicare Patient Demographic Characteristics for 340B and Non-340B Hospitals and Physician Offices* (July 2022), https://www.340bhealth.org/files/LM-340B-Health-Demographic-Report-07-28- 2022_FINAL.pdf.

[9] DaVanzo, D., Health Economics Consulting, *Issue Brief: Characteristics of Cancer Patients Receiving Drugs at 340B DSH Hospitals, Non-340B Hospitals, and Physician Offices* (2020), https://www.340bhealth.org/files/340B_Oncology_Demographics_Issue_Brief_Final.pdf.

manufacturer overcharges of 340B providers, which reduce the savings available to covered entities to fund patient care.

In addition to supporting safety-net facilities and their patients, 340B plays an important role in slowing drug price increases for all Americans. 340B serves as a significant restraint on drug company pricing for non-340B drugs, resulting in savings of $7 billion from 2013 to 2017 for Medicare Part D alone.[10] This is due to the 340B inflationary penalty which increases the percentage of the 340B discount when drug companies increase their prices faster than inflation. 42 U.S.C. § 1396r-8(c)(2)(A). The inflationary penalty can be substantial for manufacturers that choose to increase their drug prices so significantly that the ceiling price formula results in a negative or zero price. It is critically important that pharmaceutical companies meet their 340B statutory pricing obligations and allow covered entities to purchase their drugs at or below the 340B ceiling price without being subjected to overcharges.

## CONCLUSION

For the above reasons, 340B Health respectfully submits this amicus brief in support of Plaintiff-Relator and urges this Court to reconsider the District Court's Order Granting Motion to Dismiss, entered on March 18, 2024 (ECF No. 151).

---

[10] Dickson, S., *Association Between the Percentage of US Drug Sales Subject to Inflation Penalties and the Extent of Drug Price Increases* (Sept. 2020), https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2770540.

7

Dated: July 26, 2024                    Respectfully submitted,

/s/ Ian J. Barlow
Ian J. Barlow (State Bar No. 262213)
KERSHAW TALLEY BARLOW PC
401 Watt Ave., Ste. 1
Sacramento, CA 95864
Tel: 916-779-7000
Fax: 916-244-4829
Email: ian@ktblegal.com

*Attorneys for Amicus Curiae 340B Health*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

### 9th Cir. Case Number 24-2180

I am the attorney or self-represented party.

**This brief contains 2,398 words,** including 2,398 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[**X**] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**   /s/ Ian J. Barlow      **Date** July 26, 2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**            *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the ACMS system. Participants in the case are registered ACMS users, and service will be accomplished by the ACMS system.

/s/ Ian J. Barlow
Ian J. Barlow
*Attorneys for Amicus Curae 340B Health*